UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DELTA LEVEL LLC d/b/a DELTA LEVEL
DEFENSE, and RYAN GISOLFI,

                              Plaintiffs,                    Case No. 24 Civ. 3461

      -against-

SUFFOLK COUNTY, New York,           **COMPLAINT**
TIMOTHY SINI, Individually, BETH
CREIGHTON, Individually, NICHOLAS
MAURO, Individually, MARY SKIBER,
Individually, NICHOLAS LORUSSO,       **Jury Trial Demanded**
Individually,

                            Defendants.
--------------------------------------------------------x

Plaintiffs, DELTA LEVEL LLC d/b/a DELTA LEVEL DEFENSE and RYAN GISOLFI

("Plaintiffs"), by and through their attorneys, as and for their complaint state as follows:

### NATURE OF THE ACTION

1.  This is an action for, *inter alia,* compensatory, economic, and punitive damages for the

violation of Plaintiffs' constitutional rights as protected by the Second, Fifth, and Fourteenth

Amendments to the United States Constitution.

### JURISDICTION AND VENUE

2.  Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action

arises under the United States Constitution and laws of the United States, and under 28 U.S.C. §

1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes,

ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or

immunities secured by the United States Constitution.

3.      This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4.      Plaintiff, DELTA LEVEL LLC d/b/a DELTA LEVEL DEFENSE is a limited liability corporation with a principal place of business at 40 Embree Street, Stratford, CT.

5.      Plaintiff, RYAN GISOLFI, is a natural person and the owner and president of Delta Level Defense, LLC.

6.      Defendant, SUFFOLK COUNTY, New York is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

7.      Defendant, TIMOTHY SINI ("Sini"), sued herein in his individual capacity was, at all times relevant to this action, the District Attorney for Suffolk County, New York.  In that capacity, DA Sini created, enacted, and implemented policies and procedures for the County of Suffolk by virtue of his position in the District Attorney's Office, including the policy complained of herein.

8.      In his position as the Suffolk County District Attorney, Sini, *inter alia*, personally supervised, provided legal advice and direction to, and directed the course of action of the defendant Assistant District Attorneys and the Suffolk County law enforcement officers and/or investigators assigned to the District Attorney's Office and such investigations, including the investigation and law enforcement officers/investigators referenced herein.

9.      Defendants BETH CREIGHTON ("Creighton") and NICHOLAS MAURO ("Mauro"), at all times relevant to this action, held the position equivalent to Bureau Chief and/or supervisor of ADA Mary Skiber in connection with the complained of investigation and the "Campaign" described below.

10.     In their positions, Creighton and Mauro, *inter alia*, personally supervised, provided legal advice and direction to, and directed the course of action of ADA Mary Skiber, and the Suffolk County law enforcement officers and/or investigators assigned to the District Attorney's Office and such investigations, including the investigation and law enforcement officers/investigators referenced herein. Creighton and Mauro had the authority to create, enact, and/or implement policies and procedures for the County of Suffolk by virtue of their positions in the District Attorney's Office and did, in fact, create the Campaign detailed below individually and collectively with the named defendants.

11.     Defendant, MARY SKIBER ("ADA Skiber"), sued herein in her individual capacity, is an Assistant District Attorney with the Suffolk County District Attorney's Office. ADA Skiber has the authority to create, enact, and/or implement policies and procedures for the County of Suffolk by virtue of her position in the District Attorney's Office and did, in fact, create the Campaign detailed below individually and collectively with the named defendants.

12.     In her position as an Assistant District Attorney with the Suffolk County District Attorney's Office, ADA Skiber, *inter alia*, personally supervises, provides legal advice and direction to, and directs the course of action of investigations conducted by the Suffolk County law enforcement officers and investigators assigned to the District Attorney's Office including Defendant Nicholas LoRusso.

13.     Defendant NICHOLAS LORUSSO, ("LoRusso"), sued herein in his individual capacity, is a civil, non-law enforcement investigator employed by the Suffolk County Police Department (SCPD).

14.     At all times relevant herein, LoRusso was assigned as an investigator with the District Attorney's Squad in the Rackets Bureau. In that assignment, LoRusso conducts firearms-

related investigations and was the lead investigator in the "Campaign" complained of below. LoRusso also did, in fact, create the Campaign detailed below individually and collectively with the above-named named defendants.

15. The DA Squad of SCPD is assigned to the District Attorney's Office to, *inter alia*, undertake investigations in conjunction with and/or initiated by various prosecutors in the DA's Office, and with the knowledge, approval, and personal involvement of DA Sini.

## MATERIAL FACTS

16. In May 2021, the defendants engaged in a widespread and nefarious abuse of power (the "Campaign") by which they unlawfully confiscated hundreds of firearms that, at that time, were entirely legal to own, purchase, and sell in New York State – the Delta Level Defense CT4-2A Other Firearm ("CT4-2A").

17. The Delta Level Defense CT4-2A is an "other firearm" – a weapon that does not fall into a specified category, such as rifle, pistol, or shotgun.

18. Defendants placed numerous calls and mailed hundreds of letters to law-abiding citizens who legally purchased CT4-2As from federally licensed firearms dealers (FFL) in Suffolk County after passing a federal background check (the "Purchasers") between November 2018 and November 2020 – falsely informing them that the CT4-2A they purchased was "**NOT** in compliance with the New York State Penal Law."

19. Defendants falsely informed Purchasers that their possession of a CT4-2A is a crime under the New York State Penal Law and threatened arrest if they did not surrender their CT4-2As to the Suffolk County Police Department (SCPD). Defendants wrongfully confiscated hundreds of lawfully purchased and owned CT4-2As.

20.     Defendants commenced this Campaign of deceit with full knowledge that the CT4-2A did not fall into any category of weapon identified under the Penal Law – as Defendants' own Crime Laboratory firearms expert informed them long before this Campaign began.

21.     In fact, "other firearms" would continue to be ***absolutely legal*** to possess, sell, and purchase for another year – until Governor Hochul announced (to her dismay) that it was "completely legal" to purchase such "other firearms" (like the CT4-2A) and passed a law in 2022 outlawing them.

22.     Immediately upon publication of Defendants' May 20, 2021 Letter, Plaintiffs experienced a social media blitz against Plaintiffs, numerous calls, emails, messages, social media and blog posts, and other communications from angry and confused Purchasers accusing Plaintiffs of marketing and selling an illegal firearm in New York.  Existing customers and potential customers sought to have their CT4-2A returned and refunded by Plaintiffs, orders from New York FFLs were canceled, for fear of violating the "law" Defendants declared was being broken by the possession, sale, and/or purchase of the CT4-2A.

23.     The corollary to Defendants' [false] statements that the CT4-2A is an illegal firearm is: Plaintiffs are illegal arms dealers.

24.     Because Plaintiffs are the ***sole*** manufacturer and commercial seller of the CT4-2A, Defendants' statements were understood by the purchasers, sellers, and others as "of and concerning" Delta Level Defense and its owner, Ryan Gisolfi.

25.     Gisolfi has held a federal firearms license (FFL) without incident since 2009. Gisolfi is a certified gunsmith, licensed armorer, and NRA-Certified Instructor for Rifle, Pistol, and Shotgun

26.     Gisolfi is the manufacturer of the CT4-2A firearm which, at all times relevant to this action, was lawfully sold commercially (through DLD) to FFLs in 49 of the 50 United States for retail sale, including the states of New York, Connecticut, and New Jersey.

27.     The CT4-2A was designed by Gisolfi and created to specifically fall within the boundaries of firearms that are legal to possess.

28.     The characteristics and features of the CT4-2A, as it was configured by DLD for sale to FFLs in New York, New Jersey, and Connecticut did not meet the definition of a "rifle" or a "pistol."

29.     All CT4-2As sold to FFLs in the tri-state area were specifically configured to comply with state law.

30.     The CT4-2A is a semiautomatic weapon with an overall length greater than 26 inches.

31.     The CT4-2A is not a pistol, rifle, or shotgun.

32.     The CT4-2A is classified as an "other firearm."

33.     Every CT4-2A is manufactured and sold with 4 mandatory features:

(i)      forearm brace;

(ii)     barrel length over 12 inches;

(iii)     an overall length greater than 26 inches;

(iv)     vertical foregrip (not an angled foregrip).

34.     The presence of all 4 features excludes the CT4-2A from classification as a pistol, rifle, or shotgun.

35.     Every CT4-2A sold by Plaintiffs to FFLs in New York State were manufactured with all 4 features and, as such, were legal to possess, sell, and purchase.

***Not a Rifle or Shotgun***

36.     The CT4-2A has a .223/.556 rifled barrel.

37.     Shotguns have a smooth barrel, not a rifled barrel like pistols and rifles.

38.     Rifles and shotguns are designed, made, and intended to be fired from the shoulder and are equipped with a stock for such purpose.

39.     The CT4-2A was not designed, made, or intended to be fired from the shoulder.

40.     The CT4-2A does not have a buttstock/shoulder stock -- it is manufactured with a forearm brace.


***Not a Pistol***

41.     The common person in America understands the term "pistol" to be synonymous with "handgun," and the common idea of a pistol encompasses a concealable revolver and/or semiautomatic handgun that can be comfortably held in one's hand and able to be fired with one hand.

42.     Pistols are made, designed, and intended to be fired with one hand.

43.     The CT4-2A is not made, designed, or intended to be fired with one hand as evidenced by the fact that the CT4-2A is specifically designed with a front vertical foregrip intended to be used by a second hand.

44.     Additionally, the overall weight of the CT4-2A, combined with the vertical foregrip creates a front-heavy imbalance, foreclosing any intention that it held comfortably in one hand or that it be fired with one hand.

45.     Pistols are made and designed for concealment.

46. The CT4-2A is not made or intended to be concealed, as its overall length exceeds 26 inches.

47. Moreover, the CT4-2A is not an "AR pistol" because it has a vertical foregrip. The "AR pistol" is equipped with either a hand stop or an angled foregrip.

48. Suffolk County was the only jurisdiction in New York that pursued the confiscation of the CT4-2A and/or took any negative action under the belief that the CT4-2A was illegal to possess in New York State.

*2021 Confiscation Campaign*

49. Beginning in May 2021, Defendants commenced a campaign to confiscate hundreds of firearms that were lawfully purchased from a FFL located in Suffolk County and lawfully possessed by law-abiding residents of Suffolk County, Nassau County, and other counties and states: the Delta Level Defense CT4-2A.

50. As alleged above, Gisolfi designed and manufactured the CT4-2A for compliance under state and federal law, including New York State.

51. The CT4-2A does not meet the New York state (or federal, or common definition) of "rifle" or "pistol."

**The 4 Mandatory Features of the CT4-2A Other Firearm**

52. The CT4-2A is a semiautomatic gun that has the following characteristics:

- A "forearm brace";
- A vertical foregrip;
- A barrel length over 12 inches;
- A second, vertical foregrip; and
- An overall length in excess of 26 inches.

**The CT4-2A is Not a "Firearm"
as Defined by the New York State Penal Law or Federal Law**

53.     Penal Law § 265.00, *et seq.* criminalizes the possession of "firearms" in New York State.

54.     Penal Law § 265.00(3) defines a "firearm" as:

"(a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon.  For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm." § 265.00(3).

55.     Federal law defines "firearm" as:

"(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." 26 U.S.C. § 5845 (a).

56.     The CT4-2A is not a "firearm" as defined by Penal Law 265.00 (3).

57.     The CT4-2A is not a "firearm" as defined by 26 U.S.C.§ 5845 (a).

58.     The CT4-2A is not a "rifle".

59.     The CT4-2A is not a "shotgun".

60.     The CT4-2A is not a "pistol".

        The CT4-2A is not "made from a shotgun or rifle".

61.     The CT4-2A does not have "an overall length of less than twenty-  six inches".

### The CT4-2A is Not a "Rifle"
### as Defined by the New York State Penal Law or Federal Law

62.     Penal Law § 265.00 (11) defines a "rifle" as:


"a weapon designed or redesigned, made or remade, and intended to be fired
from the shoulder and designed or redesigned and made or remade to use the
energy of the explosive in a fixed metallic cartridge to fire only a single
projectile through a rifled bore for each single pull of the trigger." § 265.00(11).


63.     Federal law defines a "rifle" as:


"a weapon designed or redesigned, made or remade, and intended to be fired
from the shoulder and designed or redesigned and made or remade to use the
energy of the explosive in a fixed metallic cartridge to fire only a single
projectile through a rifled bore for each single pull of the trigger and shall
include any such weapon which may be readily restored to fire a fixed cartridge."
26 U.S.C. § 5845.


64.     The CT4-2A Other is not a "rifle" as defined by New York State or federal law.

65.     The CT4-2A Other is not "designed or redesigned, made or remade, and intended

to be fired from the shoulder."

66.     The CT4-2A does not have a "shoulder stock/buttstock".

### The CT4-2A is Not a "Shotgun"
### as Defined by the New York State Penal Law or Federal Law

67.     New York Penal Law defines a "shotgun" as:

a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." § 265.00 (12).

68.     Federal law defines a "shotgun" as:

"a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder, and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.."  26 U.S.C. § 5845(d).

69.     The CT4-2A is not a "shotgun" as defined by federal or New York State law.

70.     The CT4-2A is not a weapon "designed or redesigned, made or remade, and intended to be fired from the shoulder."

71.     The CT4-2A has a rifled barrel, not a smooth barrel like a shotgun.

### The CT4-2A is Not a "Pistol"
### as Defined by the New York State Penal Law or Federal Law

72.     The CT4-2A is not a pistol, revolver, or any other handgun.

73.     New York State does not have a definition for the term "pistol".

74.     The normal, customary, and common definition of the term pistol is synonymous with the term "handgun", "a firearm designed to be held and fired with one hand"[1] and a concealable firearm.

75.     Under 18 U.S.C. 921(a)(29), a "handgun" is a "firearm with a short stack and is designed to be held and fired by the use of a single hand."

---

[1] https://www.webster-dictionary.org/definition/Pistol

76.    27 C.F.R. 478.11 defines "pistol" as:

"A weapon originally designed, made, and intended to fire a projectile (bullet) from one or more barrels when held in one hand, and having (a) a chamber(s) as an integral part(s) of, or permanently aligned with, the bore(s); and (b) a short stock designed to be gripped by one hand and at an angle to and extending below the line of the bore(s)."

77.    Pistols are made, designed, and intended to be held and fired with one hand.

78.    The CT4-2A is not made, designed, or intended to be held and fired with one hand.

79.    The CT4-2A is not made, designed, or intended to be fired with one hand as evidenced by the fact that the CT4-2A is specifically designed with a front vertical foregrip intended to be used by a second hand. Additionally, the overall weight of the CT4-2A, combined with the vertical foregrip creates a front-heavy imbalance, foreclosing any intention that it be fired with one-hand.

80.    Pistols are made and designed for concealment.

81.    The CT4-2A is not made, intended, or capable of being concealed on the person because it has an overall length exceeding 26 inches.

82.    The CT4-2A is not a pistol or revolver.

83.    The CT4-2A is not an "AR pistol" because it has a vertical foregrip. The "AR pistol" is equipped with either a hand stop or an angled foregrip.

**The CT4-2A is Not an "Assault Weapon"**
**as Defined by the New York State Penal Law or Federal Law**

84.    The CT4-2A is not an "assault weapon".

85.    Penal Law § 265.00, *et seq.* criminalizes the possession of "assault weapons".

86.    There are three types of "assault weapons" defined in the Penal Law: (i) semiautomatic rifles with certain characteristics; (ii) semiautomatic shotguns with certain characteristics; and (iii) semiautomatic pistols with certain characteristics.[2] § 265.00 (22).

87.    The CT4-2A does not fall within the definition of "assault weapon" under Penal Law § 265.00 (22) because it is not a "rifle", "shotgun" or "pistol".

88.    Because the CT4-2A is not a "rifle", "shotgun" or "pistol", it cannot be a "semiautomatic rifle with certain characteristics", a semiautomatic shotgun with certain characteristics" or a "semiautomatic pistol with certain characteristics."

**CT4-2A Other is Not "Any Other Weapon" As Defined by Federal Law**

89.    The CT4-2A does not fit within the definition of "any other weapon" under 26 U.S.C. 5845 (e).

90.    Under 26 U.S.C. § 5845 (e), "any other weapon" is defined as:

> "The term 'any other weapon' means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

---

[2] The term "semiautomatic" is defined as: "any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell." § 265.00(21).

91.     The CT4-2A is not "any other weapon" because, *inter alia*, it is not made, capable, or intended to be concealed, it has a rifled bore, it is not designed, made, or intended to be fired from the shoulder, and it has an overall length exceeding 26 inches.

92.     Defendants had actual knowledge in November 2020 that the Delta Level Defense CT4-2A did not fit the definition of a "firearm", "pistol", "rifle", "shotgun" or "assault weapon" under federal law or the New York Penal Law, nor did New Jersey and Connecticut laws conform to Defendants' desired characterization of the CT4-2A as an "assault rifle" and/or an "assault pistol."

### *Over a Year Later Gov. Hochul Outlaws "Other Firearms" Like the CT4-2A*

93.     One year after Defendants' Campaign began, Gov. Hochul recognized the *legality* of "other firearms" under New York State laws (like the CT4-2A), acknowledging that "other firearms" cannot be classified as a "rifle" or a "pistol" and are, therefore, "not subject to [New York State] laws."

94.     At a press conference held *a year after Defendants' public campaign*, Hochul announced that "other firearms" are "not subject to our laws" and "can be legally bought" in New York.[3]

95.     Gov. Hochul acknowledged that "other" weapons like the CT4-2A

> "*can legally be bought in the State of New York today* because there's a new category of weapons, where the characteristics put them in a *grey space between rifles, and shotguns, and pistols.*
>
> And they're specifically designed to *fall outside the realm of regulation*.

---

[3] https://www.bing.com/videos/search?q=Press+Conference+Governor+Hochul+Guns&&view=detail&mid=C892F5C5191C418B8FCFC892F5C5191C418B8FCF&&FORM=VRDGAR

So, they're **not subject to our laws**. That is how they're created. That is why they exist. Superintendent would you please show us what an 'any other weapon' looks like…**our laws don't regulate this**." (emphasis added).

96.     More than a year **after** Defendants' Campaign, the New York Legislature passed a law making "other firearms" (like the CT4-2A) illegal.  See, Penal Law § 265.00(3)(f).

97.     From 2018 through May 20, 2021, Plaintiffs had lawfully sold thousands of CT4-2A weapons, which were continuing to be sold, to FFLs for retail sale throughout New York State since 2018.

98.     For  over three (3) years, the CT4-2A had been sold to retailers in New York who were licensed by the federal government (FFLs) and by New York State to sell firearms to the general public.

99.     And because all FFLs in New York State are required by law to conduct a federal criminal and mental health background check through NICS (National Instant Criminal Background Check System), the CT4-2A was not being sold by FFLs to criminals and/or 'prohibited persons.'

100.     Defendants drafted and mailed out a form letter (the "Letter") to hundreds of individuals who purchased a Delta Level Defense CT4-2A Other Firearm between 2018 and November 2020.

101.     The first batch of the Letter, dated May 20, 2021, was mailed out and received in and around the same date. The second, third, and fourth batches were mailed out between June 2021 and August 2021.

102.     Each batch of the Letter was mailed to hundreds of individuals who lawfully purchased a CT4-2A from Jerry's Firearms in Suffolk County, New York after a federal background check through the National Instant Criminal Background Check System.

103.    Defendants' Letter targeted hundreds of lawful purchasers in numerous jurisdictions, both within Suffolk County and outside of Suffolk County, including *inter alia*, Nassau County, Putnam County, Sullivan County, Westchester County, and as far away as Pennsylvania.

104.    Defendants' Letter targeted hundreds of lawful purchasers in numerous jurisdictions, which under color of law and police authority, falsely informed that the CT4-2A Other Firearm they purchased was contraband and directed that the CT4-2A be surrendered to them under threat of arrest and prosecution.

105.    Because the CT4-2A was lawfully sold, purchased, owned, and possessed in 49 of the 50 United States, Defendants' policy was an outlier. The CT4-2A was being lawfully sold, purchased, and possessed at the same time in numerous other counties in the state.

***Defendants Disregarded Multiple Sources, Experts, and the Law to Accomplish Their Goal***

106.    Desperate to eradicate a lawful weapon purchased and possessed by law-abiding people after a federal background check, Defendants ***intentionally and recklessly disregarded***:

- the plain language of the New York State Penal Law,

- New Jersey state law interpretations and applications;

- Connecticut state law interpretations and applications;

- the federal government's interpretations and applications;

- common understandings, usage, and definitions; and

- the supervisor of the Firearms Unit of the Suffolk County Crime Laboratory, Roy Sineo ("Sineo").

107.    Sineo has worked as a firearms expert for the Suffolk County District Attorney's Office for approximately 25 years.

108.    Sineo's analysis and testimony has been relied on by the Suffolk County District Attorney's Office and its investigators and prosecutors for years (including Defendants) to support the prosecution of thousands of firearm-related crimes.

109.    Sineo also has personal experience with firearms through target shooting and from being a hunter for decades.

110.    Sineo's Firearms Reports always indicate whether the firearm analyzed was a shotgun or rifle or pistol; Sineo then identifies the features present on the weapon being analyzed.

111.    In September 2020, Defendants provided Sineo with a Delta Level Defense CT4-2A for analysis.

112.    Sineo performed an analysis of the CT4-2A on September 29, 2020 – ***eight months before*** Defendants' Campaign began.

113.    Sineo concluded that the CT4-2A could not be classified as a rifle, shotgun, or pistol under the Penal Law.

114.    ***Before*** the Campaign began, before the Letters, before the phone calls to the Purchasers, and before the forced confiscations, Creighton, Mauro, and Skiber discussed with Sineo his conclusions that the CT4-2A was an "other" weapon that did not fit within any definition of the weapons in the Penal Law – and that information was communicated to Sini. Skiber was also aware through her conversations with Sineo, Creighton and/or Mauro – and from a plain read of Sineo's reports of his analysis of the CT4-2A.

115.    Sineo's conclusions were also communicated to LoRusso, who was also  aware from a plain reading of Sineo's reports.

116.    Defendants patently disregarded Sineo's conclusions because they were contrary to Defendants' Campaign.

117.    Defendants Creighton, Mauro, and Skiber relayed Sineo's conclusions to Sini prior to May 20, 2021.

118.    Defendants Creighton, Mauro, LoRusso, and Skiber worked together to draft the form Letter, which was reviewed, and approved for publication, by Sini before it was published – and it was placed on Suffolk County Police Department letterhead to further enhance the threat of the enforcement of criminal penalties, arrest, incarceration, and prosecution.

119.    Sini reviewed a December 28, 2020 prosecution memorandum drafted by Creighton, Mauro, and Skiber that (somehow) deduced – contrary to common sense, Sineo's expert opinion, and the views of any individual with a modicum of firearms experience, the plain text of the New York State Penal Law, the laws of Connecticut, New Jersey, and the federal government, and the course of reference historically  relied on by New York State in making such interpretations - that the CT4-2A is ***both*** a "rifle" and "pistol" with added unlawful characteristics that transform it into ***both*** an "assault rifle" and an "assault pistol" under Penal Law § 265.00, *et seq*. Defendants individually and collectively reached this opinion.

120. Sini has personally acknowledged that, based on *inter alia* the prosecution memo, he made the final determination for Defendants to proceed under the belief that the Delata Level Defense CT4-2A was an illegal weapon under the New York State Penal Law.

121.    Defendants' conclusions were a factual and legal impossibility and patently incorrect.

122.    Defendants Sini, Creighton, Mauro, and Skiber, as prosecutors with a duty of ethics and candor, also ignored the rules of statutory construction concerning criminal statutes, and the rule of lenity, both of which require criminal statutes to be interpreted narrowly.

123.    Defendants intentionally and falsely threatened, scared innocent people under threat of arrest and prosecution to surrender their lawfully owned CT4-2As.

124.    Hundreds of law-abiding citizens who lawfully purchased, possessed, and owned the CT4-2A, surrendered their property to Defendants because they were being falsely induced to believe that the CT4-2A was illegal contraband in New York State.

125.    At the direction and/or with the knowledge and consent of the prosecutor Defendants, LoRusso began calling and/or appearing at the homes of innocent people who lawfully purchased the CT4-2A from Jerry's Firearms to coerce and manipulate them into surrendering their property to SCPD, including plaintiff Ron Wilson.[4]

126.    Defendants' false statements resulted in stigma, "public opprobrium" and damage to Plaintiffs' reputations.

127.    Because Plaintiffs are the sole manufacturer of the CT4-2A, Defendants' statements that the CT4-2A is "**NOT** in compliance with the New York State Penal Law" and an illegal "assault weapon," anyone receiving Defendants' Letter could have interpreted – and did interpret - the statements to be "of and concerning" Plaintiffs.

128.    This is particularly so because the *only* weapon targeted by Defendants' Campaign was the Delta Level Defense CT4-2A.

129.    Defendants did not investigate or target any "other firearm" except Plaintiffs' CT4-2A.

---

[4] *Wilson v. Suffolk County*, 21 Civ. 3716 (SIL).

130. Because Defendants' Letter was only mailed to individuals who purchased CT4-2As, everyone receiving Defendants' Letter knew and interpreted the statements to be "of and concerning" Plaintiffs.

131. For months, LoRusso and his fellow investigators continued to call Purchasers and falsely informed that the CT4-2A was an illegal weapon, that their possession of the CT4-2A in New York State was illegal, and required all CT4-2As Purchasers to surrender their CT4-2As to them/SCPD.

132. In other words, in furtherance of the Campaign, Defendants exercised all efforts to confiscate every CT4-2A that had been purchased from an FFL in Suffolk County, particularly from Jerry's Firearms.

133. When Defendants called the Purchasers and mailed the Letters out, they knew and intended to spread the word that the CT4-2A was an "illegal weapon," "assault rifle" and "assault pistol."

134. Defendants further intended that *all* purchasers of the CT4-2A would surrender their property to SCPD and that the sale of CT4-2As by FFLs in New York State would cease completely.

135. Defendants' calls and Letters did, in fact, cause the forced surrender of CT4-2As, (under false pretenses) and caused the absolute cessation of CT4-2A sales in Suffolk County, which spread to all other FFLS with whom Plaintiffs had done business in New York State.

136. Defendants' verbal and written statements did not simply defame Plaintiffs, they placed a tangible burden on their commercial market, business relationships, and ability to provide a weapon in common use for self-defense to the public.

137.   Defendants' verbal and written statements caused the "government taking" of Plaintiffs' business worth, good will, and assets without just compensation.

138.   Because of Defendants' false representations that the CT4-2A was illegal to possess, purchase, and sell in New York State, and because all Suffolk County gun stores, residents, customers, and potential customers, were in fear of Defendants' enforcement against them of Defendants' (made-up) policy, Plaintiffs lost all New York customers.

139.   After all, Defendants had already made an example out of former FFL Jerry's Firearms and its owners Jerry Rallo, and Chris Rallo by arresting and prosecuting them for "made-up" felony offenses for selling the Delta Level Defense CT4-2A.

140.   The felony charges for selling CT4-2As were ultimately *dismissed* – because the CT4-2A was, in fact, *not* illegal to possess, sell, or purchase in New York State.

141.   When Delta Level Defense went to renew its business insurance policy, their existing insurance carrier flatly denied their coverage, citing Defendants' representations that the CT4-2A was an illegal firearm and subsequent litigation brought by various Purchasers. Defendants' accusations of Plaintiffs' illegal weapons sales to gun stores in New York left Plaintiffs' unable to renew their insurance policy.

142.   When Plaintiffs were finally able to find a new insurance company, the cost of obtaining a new policy was substantially higher.

143.   Because of Defendants' statements, Plaintiffs' business was substantially halted because of the constant phone calls, emails, and social media communications from individuals who purchased a CT4-2A in New York, individuals who had also received one of Defendants' Letters, other individuals who purchased a CT4-2A outside of New York – all believing Defendants' representations that the CT4-2A were true.

144.    Many of the individuals who blogged, posted, and/or contacted Plaintiffs expressed hostility toward Plaintiffs and were upset that Plaintiffs had sold "illegal weapons" and placed them at risk for arrest and prosecution.

145.    Because of Defendants' statements, which were repeated by hundreds of individuals online, and otherwise, Plaintiffs' sales of the CT4-2A in New York State, which had been regular and prosperous throughout the state since 2018, ground to a halt.

146.    FFLs and retailers alike believed Defendants' statements and feared arrest and prosecution by Defendants.

147.    Defendants' statements chilled the right of individuals to purchase, and Plaintiffs to provide, the CT4-2A – a weapon in common use for self-defense.

148.    Put differently, by operation of their "made-up crime," Defendants eliminated the "other firearms" market not only in Suffolk County, but eventually the entire State of New York.

149.    Defendants were the only law enforcement jurisdiction taking any negative action in connection with the sale and purchase of the CT4-2A.

150.    Plaintiffs' interests concerning Defendants' policies are not simply "economic."

151.    By creating a policy that unlawfully criminalized the purchase, possession, and sale of CT4-2As, Defendants' policy violates Plaintiffs' right to provide arms to "the People."

152.    Without individuals and companies to provide/sell/transfer 'arms' to the People,  as Plaintiffs do, the Right to 'keep' arms will eventually be eliminated.

153.    Plaintiffs also bring this action to assert those concomitant rights of their customers and potential customers whose interests and rights to purchase, keep, possess, transfer, and sell the CT4-2A were terminated and adversely affected by Defendants' policy.

154.    As the operator of a firearms manufacturing company, Gisolfi has derivative standing to assert the subsidiary right to acquire arms on behalf of his customers and potential customers.

155.    Defendants' false statements caused damage to Plaintiffs that did not simply flow from harm to their reputations.

156.    Because of Defendants' false claims of the illegality of Plaintiffs' firearms, the "other firearms" market in Suffolk County and eventually other New York counties was extinguished, and Plaintiffs' existing accounts and orders were canceled.

157.    Additionally, Plaintiffs' sales decreased by 40% and they were forced to terminate several long-time employees.

158.    Defendants were bound to operate within the plain language of the New York State Penal Law, and had no authority to legislate or create 'new' criminal offenses and/or definitions of existing Penal Law terms, including those related to firearms under Penal Law § 265.00, *et seq.* The field of firearms in New York State is preempted by New York State law. See e.g., *Chwick v. Mulvey*, 81 A.D.3d 161, 172 (2d Dept. 2010) (where the Legislature has demonstrated its intent to preempt the field, all local ordinances are preempted, regardless of whether they actually conflict with the State Law; "Accordingly, in light of the comprehensive and detailed regulatory language and scheme of Penal Law § 400.00, which demonstrates the Legislature's intent to preempt the field of firearm regulation, we find that it preempts the amended ordinance" [that made the possession of a colored firearm illegal]).

159.    The Due Process Clause of the Fourteenth Amendment provides that "No state shall … deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV.

160.    "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); see also, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (collecting cases). Thus, a statute that deprives an individual of life, liberty, or property without furthering "any legitimate governmental objective" violates the Due Process Clause. *Lingle*, 544 U.S. at 542.

161.    Defendants' policies and procedures deprived Plaintiffs of value of their business, good will, and/or assets in violation of the Due Process Clause.

162.    Police policies and procedures that change the law retroactively - making conduct that was legal when undertaken now illegal - is especially likely to run afoul of the Due Process Clause. See *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976); *E. Enterps. v. Apfel*, 524 U.S. 498, 547-550 (1998) (Kennedy, J., concurring in part and dissenting in part). "If retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. Consequently, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity." *E. Enterps.*, 524 U.S. at 548-49.

163.    A regulation that deprives an owner of private property without a permissible justification violates the Due Process Clause regardless of whether it also violates the Takings Clause. See *Lingle*, 544 U.S. at 541-42; id. at 548-49 (Kennedy, J., concurring).

164.    As a result of Defendants' conduct, Plaintiffs have been caused to suffer the absolute barrier to the sale of CT4-2As in  Suffolk County, which eventually spread statewide, the

absolute barrier to the sale of "other firearms" market in Suffolk County, which eventually spread statewide, cancellation of CT4-2A orders in New York State, denial of Plaintiffs' business insurance policy renewal, devastation to Plaintiffs' reputations, plummeting sales, which forced Plaintiffs to lay-off longtime employees, the loss of existing commercial accounts inside and outside of New York State, lost revenue, stress and tension and the physical manifestation of same.

165.    The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

166.    The Takings Clause applies against the states through the Fourteenth Amendment. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).

167.    A regulation that "goes too far" by depriving the owner of its use or otherwise "interfering with legitimate property interests" requires just compensation. *Lingle*, 544 U.S. at 537-39.

168.    Neither a physical appropriation nor a public use is a necessary component of a taking. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326 (2002).

169.    Defendants' policies and procedures have permanently deprived Plaintiff and similarly situated individuals of the use and possession of their property. See, *Duncan v. Becerra*, 742 F. App'x 218, 222 (9th Cir. 2018) (affirming grant of preliminary injunction finding that (1) the government "deprive[d] Plaintiffs not just of the use of their property, but of possession, one of the most essential sticks in the bundle of property rights"; and (2) the government cannot use the police power to avoid compensation.) citing, *Lucas v South Carolina Coastal Council*, 505 U.S. 1003 (1992)., 505 U.S. at 1020-29, 112 S.Ct. 2886; *Loretto v Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (holding a permanent physical occupation authorized by the government is a taking without regard to the public interest it may serve").

170.    The possession of 'Arms' is conduct presumptively protected by the plain text of the Second Amendment.

171.    Inherent in the plain text of the Second Amendment is the right to keep (possess) Arms, which encompasses all weapons in common use for self-defense. Inextricably intertwined with the right to possess arms is the ability to purchase weapons – which is tied to the right to provide /sell / transfer ownership of those weapons.

172.    Plaintiffs' conduct – transferring/selling weapons in common use to law-abiding, ordinary people - is protected by the plain text of the Second Amendment.

173.    Defendants' policy has no roots in the text, or historical traditions in this Nation and there is no historical analogue for Defendants' conduct.

174.    The individually named Defendants are not entitled to qualified immunity as no reasonable person would have engaged in the same conduct, reasonable people would know that Defendants' conduct violated the Constitution and, *inter alia,* Defendants' conduct was undertaken pre-arrest and in an investigatory capacity.

175.    The individually named Defendants are not entitled to qualified immunity as their actions were not reasonable under any reading of the law.

176.    Defendants' policy constitutes an outlier.

177.    By enforcing the policy described herein, Defendants were, at no time, 'enforcing the Penal Law' or 'enforcing state law,' they were enforcing their own self-created policies and procedures, which are unconstitutional and in violation of the Second Amendment.

178.    Defendants' conduct as described herein was undertaken knowingly, intentionally, willfully, wantonly, maliciously and in deliberate indifference to state and federal laws.

## AS AND FOR A FIRST CAUSE OF ACTION

179.    Plaintiffs repeat and reallege as if set forth fully herein paragraphs 1 through 178.

180.    Under the theory that Defendants are liable for "Stigma Plus" under the Fourteenth Amendment. 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

181.    Plaintiffs repeat and reallege as if set forth fully herein paragraphs 1 through 180.

182.    Under the theory that Defendants are liable to Plaintiffs for violations of the predeprivation clause of the Fourteenth Amendment. 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

183.    Plaintiffs repeat and reallege as if set forth fully herein paragraphs 1 through 182.

184.    Under the theory that Defendants are liable to Plaintiffs for violations of the Second Amendment. 42 U.S.C. § 1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

185.    Plaintiffs repeat and reallege as if set forth fully herein paragraphs 1 through 184.

186.    Under the theory that Defendants are liable to Plaintiffs for violations of the "Takings Clause" of the Fifth Amendment. 42 U.S.C. § 1983.

## AS AND FOR A FIFTH CAUSE OF ACTION

187.    Plaintiffs repeat and reallege as if set forth fully herein paragraphs 1 through 186.

188.    Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policies described herein, the County of Suffolk, New York is liable to the plaintiffs under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for violations of their constitutional rights as pled herein. 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against the defendants as follows:

• Awarding the plaintiffs compensatory damages against all defendants;

• Awarding the plaintiffs economic damages;

• Awarding the plaintiff punitive damages against all individually named defendants in an amount no less than  $15 million;

• Awarding reasonable statutory attorney's fees, costs, and disbursements, under 42 U.S.C. § 1988 and any other applicable law; and

• Grant such further and alternative relief as the Court deems just and proper.

Dated: May 20, 2024
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

_____/s/_____
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com