UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

DELTA LEVEL LLC d/b/a DELTA LEVEL
DEFENSE, and RYAN GISOLFI,

                               Plaintiffs,

      -against-

SUFFOLK COUNTY, NEW YORK, TIMOTHY
SINI, *individually*, BETH CREIGHTON,
*individually*, NICHOLAS MAURO, *individually*,
MARY SKIBER, *individually*, and NICHOLAS
LORUSSO,

                               Defendants.

-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
24-CV-03641 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Of the six Defendants in this Section 1983-gun rights action, three answered the Complaint—Suffolk County (the "County"), Mary Skiber ("Skiber") and Nicholas LoRusso ("LoRusso"), *see* Answer, DE [8]—and the remaining three Defendants moved to dismiss as to the claims against them. *See* Defendant Timothy Sini's ("Sini") partial motion to dismiss ("Sini's Motion" or "Sini Mot.") Plaintiffs' Delta Level LLC d/b/a Delta Level Defense ("Delta Level") and Ryan Gisolfi ("Gisolfi") (collectively, "Plaintiffs") Complaint ("Complaint" or "Compl."), Docket Entry ("DE") [1], for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6); (ii) Defendant Beth Creighton's ("Creighton") partial motion to dismiss ("Creighton's Motion" or "Creighton Mot.") the Complaint; and (iii) Defendant Nicholas Mauro's ("Mauro") partial motion to dismiss ("Mauro's Motion" or "Mauro Mot.") the Complaint. *See* Sini Mot., DE [33-1]; Creighton Mot., DE [34]; Mauro Mot.,

1

DE [35] (collectively, the "Moving Defendants' Motions"). The Honorable Joan M. Azrack has referred the Moving Defendants' Motions to this Court for Report and Recommendation. *See* Elec. Order dated Sept. 4, 2024; Elec. Order dated Sept. 6, 2024.

By way of Complaint dated May 20, 2024, DE [1], Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 alleging: (i) "stigma-plus" liability for defamation under the due process clause of the Fourteenth Amendment; (ii) deprivation of property in violation of the due process clause of the Fourteenth Amendment; (iii) violations of the Second Amendment; (iv) violations of the takings clause of the Fifth Amendment; and (v) *Monell* liability as to the County only, which claim is not addressed here because, as explained above, the County has not moved for dismissal. *See* Compl. Sini filed his motion to dismiss on December 13, 2024, while Creighton and Mauro (collectively with Sini, the "Moving Defendants") filed theirs on December 17, 2024. *See* Sini Mot., Creighton Mot., Mauro Mot. Plaintiffs oppose. *See* Plaintiffs' Opposition to Sini's Motion, DE [33-9] ("Pls. Opp. to Sini Mot."); Plaintiffs' Opposition to Creighton Motion, DE [34-9] ("Pls. Opp. to Creighton Mot."); Plaintiffs' Opposition to Mauro's Motion, DE [35-6] ("Pls. Opp. to Mauro Mot."). For the reasons set forth herein, the Court respectfully recommends that the Moving Defendants' Motions be granted without prejudice as to Plaintiffs' claims under the Fifth and Fourteenth Amendment, and with prejudice as to their Second Amendment cause of action, and the Complaint dismissed as to the Moving Defendants.

## I.    BACKGROUND

### A. Relevant Facts

The facts herein are taken from:  (i) the Complaint, which facts are accepted as true for purposes of this Report and Recommendation; and (ii) documents incorporated into the Complaint for the reasons set forth below.

#### 1.  The Parties

Delta Level is a limited liability corporation with a principal place of business at 40 Embree Street, Stratford, CT.  Compl., ¶ 4.  Gisolfi is the owner and president of Delta Level.  *Id.*, ¶ 5.  Plaintiffs allege that in May 2021, Defendants engaged in a campaign (the "Campaign") to confiscate hundreds of a type of firearm manufactured by Delta Level: the CT4-2A.  *Id.*, ¶ 16.  Sini was, at all relevant times, the Suffolk County District Attorney, in which role he "created, enacted, and implemented policies and procedures," including the policy at issue in this action, and "personally supervised, provided legal advice and direction to, and directed the course of action" of County Assistant District Attorneys ("ADAs") and law enforcement officers.  *Id.*, ¶¶ 7, 8.  At all relevant times, Creighton and Mauro "held the position equivalent to Bureau Chief and/or supervisor of [County ADA Skiber] and "personally supervised, provided legal advice and direction to, and directed the course of action of" Skiber and "County law enforcement officers and/or investigators assigned to the District Attorney's Office." *Id.*, ¶¶ 9-10.  Moreover, Creighton and Mauro "had the authority to create, enact, and/or implement policies and procedures for the County" and "did, in fact, create the Campaign . . . individually and collectively with the named

Defendants." LoRusso "is a civil, non-law enforcement investigator employed by the Suffolk County Police Department" ("SCPD"). Compl., ¶ 13.

### 2. *The CT4-2A firearm*

Plaintiffs are the sole manufacturer and seller of the CT4-2A, a semiautomatic weapon, which they allege is "an 'other firearm'" under New York State law– "a weapon that does not fall into a specific category, such as [a] rifle, pistol or shotgun." Compl., ¶¶ 17, 24, 30, 52. At all relevant times, it was sold commercially in 49 states, including New York, Connecticut and New Jersey, and was "designed by Gisolfi and created to specifically fall within the boundaries of firearms that are legal to possess." *Id.*, ¶¶ 26-27. Every CT4-2A has the following features: (i) a forearm brace, indicating that it was not "designed, made or intended to be fired from the shoulder"; (ii) a rifled barrel longer than 12 inches; (iii) an overall length greater than 26 inches, such that it is not designed to be concealed; and (iv) a vertical, rather than angled, foregrip, intended to be used by a second hand. *Id.*, ¶¶ 33, 37. According to Plaintiffs, these features combined exclude the CT4-2A from classification as a pistol, rifle, or shotgun. *Id.*, ¶¶ 34-47.

As a result, Plaintiffs allege that the CT4-2A is not a "firearm" as defined by New York State Penal Law ("N.Y. Penal Law") § 265.00 or federal law at 26 U.S.C.§ 5845. *Id.*, ¶¶ 56-57. Moreover, because it is not "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder," the CT4-2A is not a rifle under either statute. *Id.*, ¶¶ 62-66. For the same reason, and because it has a rifled, rather than smooth, barrel, it is not a shotgun under either statute. *Id.*, ¶¶ 67-71.

Further, the CT4-2A is not a "pistol, revolver, or any other handgun" under state or federal law because it is not designed to be fired with one hand or to be concealed, and because it has a vertical, rather than angled, foregrip. *Id.*, ¶¶ 72-83. Plaintiffs acknowledge that "New York State does not have a definition for the term 'pistol.'" *Id.*, ¶ 73. Because it is neither a shotgun, nor a rifle, nor a pistol, Plaintiffs allege that the CT4-2A is not an "assault weapon" under New York law. *Id.*, ¶¶ 84-88. Finally, the CT4-2A does not fit the definition of "any other weapon" under federal law because it cannot be concealed and is longer than 26 inches. *Id.*, ¶¶ 89-91. Plaintiffs claim that:

> Defendants had actual knowledge in November 2020 that the . . . CT4-2A did not fit the definition of a "firearm," "pistol," "rifle," "shotgun," or "assault weapon" under federal law or the New York Penal Law, nor did New Jersey and Connecticut laws conform to Defendants' desired characterization of the CT4-2A as an "assault rifle" and/or an "assault pistol."

*Id.*, ¶ 92.

### 3. The Campaign

In September 2020, Defendants provided non-party Roy Sineo ("Sineo"), a firearms expert and the supervisor of the Firearms Unit of the Suffolk County Crime Laboratory, with a CT4-2A to analyze. *Id.*, ¶¶ 106-111. Sineo concluded on September 29, 2020, that the CT4-2A could not be classified as a rifle, shotgun, or pistol under the N.Y. Penal Law, and was instead an "other" weapon that did not fit within any definition under that law. *Id.*, ¶¶ 113-14. He determined that the CT4-2A is "a semiautomatic weapon" with "the ability to accept a detachable magazine outside of the pistol grip," and its features include "a pistol grip, a flash suppressor,

a shroud that completely encircles the barrel, a second hand grip that can be held by the non-trigger hand, and a telescoping 'Arm Brace.'"  Sineo Report, Malafi Decl., Ex. C, DE [35-4].  Creighton, Mauro, Skiber and LoRusso were aware of his conclusions and relayed them to Sini prior to May 20, 2021, but ultimately disregarded them. Compl., ¶¶ 114-17.

On December 28, 2020, Creighton, Mauro and Skiber drafted a prosecution memorandum (the "Prosecution Memorandum"), which Sini reviewed, concluding that the CT4-2A was both a rifle and a pistol with added characteristics that transformed it into both an assault rifle and an assault pistol within the meaning of N.Y. Penal Law §§ 265.00, *et seq.*  *Id.*, ¶ 119; *see* Prosecution Memorandum, Cohen Decl., Ex. A, DE [33-3].  Specifically, the Prosecution Memorandum concluded that the CT4-2A was:

> (A) an assault weapon because:
> > (i)    the term "pistol" was not defined by New York State; and
> > (ii)   (ii) a semiautomatic pistol with a second hand grip, the ability to accept a detachable magazine, a shroud encircling the barrel, and a manufactured unloaded weight of 50 or more ounces, all of which features the CT4-2A has, is defined as an assault weapon under the N.Y. Penal Law;
>
> (B) a rifle because it was intended to be fired from the shoulder, according to a video filmed by Chris Rallo firing it from his shoulder, and based on the position of its optical magnifiers; and
>
> (C) an "assault rifle" because it was semiautomatic and had a pistol grip, flash suppressor, shroud encircling the barrel, and second protruding handgrip.

Prosecution Memorandum at 4-8.

Notably, Plaintiffs dispute that the CT4-2A was designed to be fired from the shoulder.  Compl., ¶ 39.  In any event, Sini made the final determination that the

6

CT4-2A was prohibited by the N.Y. Penal Law based on the Prosecution Memorandum. *Id.*, ¶ 120.    According to Plaintiffs, beginning in May 2021, Defendants "placed numerous calls and mailed hundreds of letters to law-abiding citizens who legally purchased CT4-2As from federally licensed firearms dealers" between November 2018 and November 2020 in the County, advising purchasers that the CT4-2A "was 'not in compliance with the New York State Penal Law'" (the "Campaign"). *Id.*, ¶ 18.  Defendants threatened arrest if purchasers did not surrender their CT4-2As to the SCPD, and had "full knowledge that the CT4-2A did not fall into any category of weapon identified under the Penal Law." *Id.*, ¶ 20.  Among this correspondence, on May 20, 2021, Defendants mailed a letter (the "Letter") to hundreds of individuals across New York and Pennsylvania who purchased a CT4-2A between 2018 and November 2020. *Id.*, ¶¶ 100, 103.  The Letter "falsely informed [them] that the CT4-2A . . . was contraband and directed that [it] be surrendered to [Defendants] under threat of arrest and prosecution." *Id.*, ¶ 104.  Defendants mailed additional batches of the Letter between June and August 2021, *id.*, ¶ 101, and made a special effort to confiscate CT4-2As purchased from Jerry's Firearms, a licensed firearms dealer in Suffolk County, and arrested and prosecuted its owners, Jerry and Chris Rallo (the "Rallos"). *Id.*, ¶¶ 132, 139.  Felony charges against the Rallos were ultimately dropped. *Id.*, ¶ 140.  The Complaint does not specify whether Defendants mailed correspondence other than the Letter as part of the Campaign.

In response to the Letter, "angry and confused" existing and potential CT4-2A customers contacted Plaintiffs, accusing them of "marketing and selling an illegal

firearm in New York" and seeking a refund or cancelling orders. *Id.*, ¶ 22. Hundreds of purchasers surrendered their CT4-2As to Defendants as a result of the Campaign. *Id.*, ¶ 124. According to Plaintiffs, because they are the sole manufacturer and commercial seller of the CT4-2A, and because the Letter was only sent to purchasers of the CT4-2A, Defendants' statements that possession of the firearm violated the law "were understood by the purchasers, sellers, and others as 'of and concerning'" Delta Level and Gisolfi. *Id.*, ¶ 24; *see id.*, ¶¶ 127, 130. Further, the Campaign resulted in "the absolute cessation of CT4-2A sales in Suffolk County, which spread to all other [licensed firearm dealers] with whom Plaintiffs had done business in New York State," and so Plaintiffs lost all of their New York customers. *Id.*, ¶¶ 135, 138, 145. Plaintiffs' sales decreased by 40%, and they were forced to terminate several long-term employees, suffering "devastation to [their] reputations[,] . . . the loss of existing commercial accounts inside and outside of New York State[,] . . . stress and tension[,] and the physical manifestation of same." *Id.*, ¶¶ 157, 164. When Delta Level attempted to renew its business insurance policy on an unspecified date, the existing carrier refused coverage, citing Defendants' representations that the CT4-2A was an illegal firearm and litigation brought by CT4-2A purchasers. *Id.*, ¶ 141. When Plaintiffs found a new insurer, the cost of obtaining a new policy was "substantially higher." *Id.*, ¶ 142. Because of "constant phone calls, emails, and social media communications" to Delta Level from CT4-2A purchasers as a result of the Campaign, Plaintiffs' business was "substantially halted." *Id.*, ¶ 143.

According to Plaintiffs, Defendants' conduct "intentionally and recklessly disregarded" the plain language of the N.Y. Penal Law, interpretations and applications of federal, New Jersey, and Connecticut law, common definitions of words, and Sineo's analysis. *Id.*, ¶ 106.  Moreover, Defendants, "as prosecutors with a duty of ethics and candor, also ignored the rules of statutory construction concerning criminal statutes, and the rule of lenity, both of which require criminal statutes to be interpreted narrowly." *Id.*, ¶ 122.  Plaintiffs allege that Defendants' verbal and written statements "did not simply defame Plaintiffs, [but] they placed a tangible burden on their commercial market, business relationships, and ability to provide a weapon in common use for self-defense to the public." *Id.*, ¶ 136.

On an unspecified date one year after the Campaign began, Governor Kathy Hochul held a press conference and stated that "other firearms," the category to which Plaintiffs allege the CT4-2A belongs, could legally be purchased in New York at that time.  *Id.*, ¶¶ 93-95.  In 2022, according to the Complaint, the New York Legislature outlawed "other firearms," including the CT4-2A.  *Id.*, ¶¶ 21, 96.

### B. Procedural History

On May 20, 2024, Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 alleging:  (i) "stigma-plus" liability for defamation under the due process clause of the Fourteenth Amendment; (ii) deprivation of property in violation of the due process clause of the Fourteenth Amendment; (iii) violations of the Second Amendment; (iv) violations of the takings clause of the Fifth Amendment; and (v) *Monell* liability as to the County only.  *See* Compl.  Sini filed his motion to dismiss on

December 13, 2024, while Creighton and Mauro filed theirs on December 17, 2024. *See* Sini Mot., Creighton Mot., Mauro Mot.  Plaintiffs oppose.  *See* Pls. Opp. to Sini Mot., Pls. Opp. to Creighton Mot., Pls. Opp. to Mauro Mot.  For the reasons set forth herein, the Court respectfully recommends that the Moving Defendants' Motions be granted without prejudice as to Plaintiffs' claims under the Fifth and Fourteenth Amendment, and with prejudice as to their Second Amendment cause of action, and the Complaint dismissed as to the Moving Defendants.

## II.   LEGAL STANDARDS

### A. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  But a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-

moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).  Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).  Further, the court may only consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated ... by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, i.e., documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted).  A complaint incorporates a document by reference when it "makes a clear, definite, and substantial reference to the document." *Serrata v. Givens*, No. 18-CV-2016 (ARR), 2019 WL 1597297, at *3 (E.D.N.Y. Apr. 15, 2019) (internal citation omitted).  A document that has not been incorporated by reference may nevertheless be "integral" to the complaint if the complaint "relies heavily upon its terms and effect." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citation omitted).  "A district court errs when it considers affidavits and exhibits submitted . . . or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 262 (E.D.N.Y. 2021) (citing *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000)).

### B. Qualified Immunity

The Moving Defendants assert that they are entitled to dismissal of all causes of action against them on the basis of qualified immunity. *See* Memorandum in Support of Sini Motion, DE [33-11] ("Sini Mem."); Memorandum in Support of Creighton Motion, DE [34-5] ("Creighton Mem."); Memorandum in Support of Mauro Motion, DE [35-5] ("Mauro Mem."). "Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). "[B]ecause 'the entitlement is an *immunity from suit* rather than a mere defense to liability,' . . . we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)).

That said, the defense of qualified immunity will rarely support a Rule 12(b)(6) motion unless "the facts supporting the defense appeared on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004). In this regard, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 436. "With the benefit of those inferences, we then ask whether the plaintiff has pled 'facts showing[:] (1) that the official violated a statutory or constitutional right, and

(2) that the right was "clearly established" at the time of the challenged conduct.'"
*Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (citing *Ganek v. Leibowitz*, 874 F.3d
73, 80 (2d Cir. 2017)).  "The judges of the district courts and the courts of appeals
should be permitted to exercise their sound discretion in deciding which of the two
prongs of the qualified immunity analysis should be addressed first in light of the
circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223,
236, 129 S. Ct. 808, 818 (2009).

### C. New York's Restriction on Assault Weapons

"New York has long criminalized the possession of 'assault weapons.'"  *Lane v.
Rocah*, No. 22-CV-10989 (KMK), 2024 WL 54237, at *1 (S.D.N.Y. Jan. 4, 2024) (citing
N.Y. Penal Law § 265.02(7)).  The manufacture of an assault weapon was prohibited
by N.Y. Penal Law § 265.10 at all relevant times, and still is.  *See New York State
Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 249 (2d Cir. 2015); N.Y. Penal Law
§ 265.10, as effective November 1, 2019.  During the period relevant here, an assault
weapon was defined within the N.Y. Penal Law as, *inter alia*:

> (a) a semiautomatic rifle that has an ability to accept a detachable
> magazine and has at least one of the following characteristics . . . (ii)
> a pistol grip that protrudes completely beneath the action of the
> weapon; . . . (iv) a second handgrip or a protruding grip that can be
> held by the non-trigger hand; . . . [or] (vi) a flash suppressor[;]
>
> . . .

or

> (c) a semiautomatic pistol that has an ability to accept a detachable
> magazine and has at least one of the following characteristics . . .
> (iii) a second handgrip or a protruding grip that can be held by the
> non-trigger hand; (iv) capacity to accept an ammunition magazine
> that attaches to the pistol outside of the pistol grip; . . . (vi) a shroud
> that is attached to, or partially or completely encircles, the barrel

> and that permits the shooter to hold the firearm with the non-trigger
> hand without being burned; [or] (vii) a manufactured weight of fifty
> ounces or more when the pistol is unloaded[.]"

N.Y. Penal Law § 265.00(22), as effective Apr. 3, 2021.  A "pistol" was not defined in

the statute, nor is it now.  A "rifle" was defined as:

> a weapon designed or redesigned, made or remade, and intended to be
> fired from the shoulder and designed or redesigned and made or remade
> to use the energy of the explosive in a fixed metallic cartridge to fire only
> a single projectile through a rifled bore for each single pull of the trigger.

N.Y. Penal Law § 265.00(11), as effective Apr. 3, 2021.[1]

## III.    DISCUSSION

### A. The Parties' Exhibits to Briefing on the Moving Defendants' Motions & Incorporation by Reference

Initially, the Moving Defendants attach a variety of documents to their motions

to dismiss.  *See* Declaration of Dennis Cohen ("Cohen Decl."), Exs. A through F, DEs

[33-2]-[33-8]; Declaration of Stephen L. O'Brien ("O'Brien Decl."), Exs. 1 through 4,

DEs [34-1]-[34-4]; Declaration of Christine Malafi ("Malafi Decl."), Exs. A through C,

DEs [35-1]-[35-4].    Plaintiffs in turn attach three deposition excerpts to their

opposition.  *See* Declaration of Amy Bellantoni in Opposition to Sini's Motion, Ex. 1,

DEs [33-10], [33-13]; Declaration of Amy Bellantoni in Opposition to Creighton's

Motion, Exs. A, B, DEs [34-6]-[34-8].  Of those attachments, the Court concludes that

three are incorporated in the Complaint: (i) the Prosecution Memorandum, Cohen

Decl., Ex. A, DE [33-3]; (ii) the Letter, O'Brien Decl., Ex. 1, DE [34-2]; and (iii) the

---

[1] A "rifle" is presently defined in the same way, except that: (i) there are now additional requirements for the manner in which the projectile is fired; and (ii) rifles that fire obsolete ammunition or are loaded through the muzzle are also specifically included.  N.Y. Penal Law § 265.00(11), as effective Nov. 22, 2024.

Sineo Report, Malafi Decl., Ex. C, DE [35-4]. The Complaint "makes a clear, definite, and substantial reference to" the Prosecution Memorandum at Paragraph 119 ("Sini reviewed a December 28, 2020 prosecution memorandum drafted by Creighton, Mauro, and Skiber . . ."), to the Letter at Paragraphs 100-04 ("Defendants drafted and mailed out a form letter . . . to hundreds of individuals who purchased a [CT4-2A] between 2018 and November 2020," Compl., ¶ 100), and to the Sineo Report at Paragraphs 111-13 ("Sineo performed an analysis of the CT4-2A on September 29, 2020," Compl., ¶ 112). *Serrata*, 2019 WL 1597297, at *3; Compl., ¶¶ 100-04, 111-13, 119.

The remaining exhibits, however, are not incorporated into the Complaint. In support of his Motion, Sini attaches a variety of documents related to the prosecution of the Rallos, which is addressed only in passing in the Complaint. *See* Cohen Decl., Exs. B-F; Compl., ¶ 139. In opposition to Sini's and Creighton's Motions, Plaintiffs attach three deposition excerpts, which are not referenced at all in the Complaint. *See* Declaration of Amy Bellantoni in Opposition to Sini's Motion, Ex. 1; Declaration of Amy Bellantoni in Opposition to Creighton's Motion, Exs. A, B. The Court sees no justification for considering these documents at this stage. *See Westwide Winery, Inc.*, 511 F. Supp. 3d at 262.

### B. Plaintiffs' "Stigma-Plus" Claim Under the Due Process Clause of the Fourteenth Amendment

Turning to Plaintiffs' claims, the Moving Defendants argue that Plaintiffs' first cause of action for "stigma-plus" liability under the due process clause of the Fourteenth Amendment should be dismissed on qualified immunity grounds and on

the merits.  *See* Sini Mem. at 4-12; Creighton Mem. at 11-18; Mauro Mem. at 8-17. "[T]he 'stigma plus' doctrine . . . in limited circumstances provides a remedy for government defamation under federal constitutional law." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).  The Court concludes that Plaintiffs have failed to state a claim for "stigma-plus" liability, and so dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(6).

The phrase "'[s]tigma-plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citing *Paul v. Davis*, 424 U.S. 693, 701-02, 96 S. Ct. 1155, 1161 (1976); *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir. 1989)).  "To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah*, 383 F.3d at 38 (citing *Doe v. Dep't of Pub. Safety ex rel. Lee,* 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds sub nom. Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 6–7, 123 S. Ct. 1160 (2003)).  The second element "fails ... [when plaintiffs] allege only damage to professional and personal reputation and resulting loss of business, [which are] injuries that may support state tort claims but not a constitutional action." *Autotech Collision Inc. v. The Inc. Vill. of Rockville Ctr.*, 673 F. App'x 71, 74 (2d Cir. 2016) (citing *Sadallah*, 383 F.3d at 38) (rejecting the plaintiffs' stigma-plus claims alleging

16

that the defendants acts had caused the plaintiffs damage to their business reputation and the deprivation of goodwill, because the harms were not "in addition to" the alleged defamation, "but rather [were] direct 'deleterious effects' of that defamation.") (internal citation omitted).

Here, the basis of Plaintiffs' claim is that the Moving Defendants' statements in the Letter and accompanying phone calls resulted in "damage to [their] professional and personal reputation and resulting loss of business." *Autotech Collision Inc.*, 673 F. App'x at 74; *see* Compl., ¶¶ 123, 126, 135-37. These allegations cannot support a stigma-plus claim, without more than these standard state-law defamation damages. *Autotech Collision Inc.*, 673 F. App'x at 74.

Accordingly, the Court recommends dismissal without prejudice and with leave to amend the Complaint. *See Parot v. Clarivate Plc*, No. 22-CV-00394 (EK) (MMH), 2023 WL 4163528, at *1 (E.D.N.Y. June 23, 2023) ("'A court has the discretion to grant leave to amend *sua sponte* even when the amending party has not moved for leave to amend the pleading[,]'" and such leave shall be "'freely given'" in the absence of undue delay, bad faith, a repeated failure to cure deficiencies, prejudice or futility.) (quoting *Khodeir v. Sayyed*, 323 F.R.D. 193, 197 (S.D.N.Y. 2017); *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Because the Court recommends dismissing this claim on the merits and granting Plaintiffs leave to replead, it is premature to consider whether qualified immunity applies to bar this cause of action.

### C. Plaintiffs' Deprivation of Property Claim Under the Due Process Clause of the Fourteenth Amendment

Next, the Moving Defendants argue that that Plaintiffs' cause of action under the due process clause of the Fourteenth Amendment for deprivation of property fails (i) on qualified immunity grounds; (ii) because Plaintiffs have failed to identify a property interest taken without due process; and, in Creighton's case (iii) because Plaintiffs have alleged no state action against her.  *See* Sini Mem. at 13-14; Creighton Mem. at 19-20; Mauro Mem. at 17-19.  The Court agrees in part and recommends dismissal because Plaintiffs fail to state a claim.

The Complaint does not indicate whether it alleges a substantive or procedural due process violation, and as a result, the Court considers both.  To establish a substantive due process claim, a plaintiff must show that he was deprived a cognizable liberty or property interest and that the defendants acted in a manner so "egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005); *see Zynger v. Dep't of Homeland Sec.*, 615 F. Supp. 2d 50, 59 (E.D.N.Y. 2009), *aff'd*, 370 Fed.Appx. 253 (2d Cir. 2010).  In order to assert a violation of procedural due process, a plaintiff must "first identify a property right, second show that the [state] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted).

Here, the Moving Defendants are entitled to dismissal as to both types of due process claim because Plaintiffs have not alleged a sufficient property interest to

18

support this cause of action. Plaintiffs assert that "Defendants' policies and procedures deprived Plaintiffs of [the] value of their business, good will, and/or assets" and that Defendants' conduct caused "cancellation of CT4-2A orders in New York State, denial of Plaintiffs' business insurance policy renewal, devastation to Plaintiffs' reputations, plummeting sales, which forced Plaintiffs to lay-off longtime employees, the loss of existing commercial accounts inside and outside of New York State, lost revenue, stress and tension and the physical manifestation of same." Compl., ¶¶ 161, 164. Initially, "*the activity of doing business*, or *the activity of making a profit* is not property" for purposes of a Fourteenth Amendment due process claim. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 119 S. Ct. 2219, 2225 (1999) (emphasis in original). Accordingly, Plaintiffs' allegations that their future sales and customers were negatively impacted cannot support a cause of action. *See Adams v. Smith*, No. 07-CV-045 (LEK) (RFT), 2015 WL 4139686, at *8 (N.D.N.Y. July 9, 2015).

While a business's "good will" may support a deprivation-of-property claim under the Fourteenth Amendment due process clause, *see Coll. Sav. Bank*, 527 U.S. at 675, 119 S. Ct. at 2225, the only lost "good will" Plaintiffs allege is to their reputation. *See* Compl., ¶¶ 161, 164. Loss of reputation labeled as an injury to a business's good will cannot, however, sustain a due process claim: "It is settled that 'defamation is not, absent more, a deprivation of a liberty or property interest protected by due process' . . . . We doubt, therefore, that plaintiffs can state a cognizable due process claim simply by classifying the damage to their reputation as

19

damage to the 'goodwill' of their business." *Cutie v. Sheehan*, 645 F. App'x 93, 95 (2d Cir. 2016) (citing *Sadallah,* 383 F.3d at 38) (upholding dismissal of plaintiffs' due process claim under the Fourteenth Amendment); *Chrebet v. Cnty. of Nassau*, 24 F. Supp. 3d 236, 245 (E.D.N.Y. 2014), *aff'd sub nom. Chrebet v. Nassau Cnty.*, 606 F. App'x 15 (2d Cir. 2015) ("Decisions by and within the Second Circuit indicate . . . that the loss of a future business opportunity is not a protectable property interest.") (collecting cases) (citation omitted); *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004) ("A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983.") (citing *Paul,* 424 U.S. at 701, 96 S.Ct. at 1160); *Nat'l Rifle Ass'n of Am. v. Cuomo*, 350 F. Supp. 3d 94, 135-36 (N.D.N.Y. 2018) (dismissing due process claim based on, *inter alia*, loss of good will).  Accordingly, Plaintiffs have failed to state a property interest protectible by the Fourteenth Amendment's due process clause, and dismissal without prejudice is appropriate.  *See Parot,* 2023 WL 4163528, at *1. Again, because this claim fails on the merits and the Court recommends granting Plaintiffs leave to replead, it is premature to consider whether qualified immunity applies.

### D.  Plaintiffs' Second Amendment Claim

The Moving Defendants also argue that Plaintiffs' Second Amendment cause of action should be dismissed on qualified immunity grounds, *see* Sini Mem. at 4-10, Creighton Mem. at 11-13, Mauro Mem. at 8-14, and on the merits for two reasons:  (i)

the Second Amendment does not protect the right to carry a particular firearm, *see* Sini Mem. at 14, Mauro Mem. at 19-20; and (ii) the Second Amendment does not protect the right to sell a semi-automatic assault weapon. *See* Creighton Mem. at 20-22. For the reasons set forth below, the Court recommends dismissing this cause of action against the Moving Defendants with prejudice on qualified immunity grounds.

As explained above, an official is entitled to qualified immunity when it is "objectively reasonable for [him or her] to believe that [his or her] conduct did not violate plaintiff's rights." *Mandell*, 316 F.3d at 385. The Second Amendment commands that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Due Process clause of the Fourteenth Amendment incorporates the Second Amendment and renders the right to keep and bear arms fully applicable against the states. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750, 130 S. Ct. 3020, 3025 (2010). This right, however, "'is not unlimited[.]'" *United States v. Ceruti*, No. 24-CR-295 (KMW), 2024 WL 5186532, at *1 (S.D.N.Y. Dec. 20, 2024) (citing *District of Columbia v. Heller*, 554 U.S. 570, 595, 626, 128 S.Ct. 2783, 2799, 2816 (2008)).

On January 15, 2013, New York enacted the Secure Ammunition and Firearms Enforcement Act ("SAFE Act"), which expanded the definition of prohibited "assault weapons" to include semiautomatic rifles, shotguns and pistols with one additional characteristic, rather than two, as the previous version of N.Y. Penal Law required. *See New York State Rifle & Pistol Ass'n, Inc.*, 804 F.3d at 249. This definition was in

force during the Campaign.  *See* N.Y. Penal Law § 265.00(22), as effective Apr. 3, 2021.  In 2015, the Second Circuit concluded that New York's restriction on assault weapons did not violate the Second Amendment, with an exception not relevant here. *See New York State Rifle & Pistol Ass'n, Inc.*, 804 F.3d at 249, n.8, 252.  The next year, the Second Circuit reaffirmed this decision, and has not overturned itself since. *See Kampfer v. Cuomo*, 643 F. App'x 43 (2d Cir. 2016).  Therefore, at the time of the Moving Defendants' actions, it was clearly established that New York's prohibition on assault weapons did not violate the Second Amendment.  *See Neary*, 753 F. App'x at 84.

In 2022, the Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, which addressed a challenge to a different New York state firearm regulation, and introduced a new burden on the government to establish that its firearm regulation is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 33, 142 S. Ct. 2111, 2135 (2022).  On December 30, 2022, in light of the *Bruen* decision, an action was filed in the Southern District of New York challenging New York's assault weapons ban under the same N.Y. Penal Law provisions at issue here.  *See Lane et al v. James et al.*, Case No. 7:22-cv-10989 (KMK), DE [1] (S.D.N.Y. Dec. 30, 2022).  On March 25, 2022, the *Lane* court denied cross-motions for summary judgment, *see id.*, DE [99], and *Lane* is currently stayed pending the outcome of another action in the Second Circuit addressing the constitutionality of an assault weapons ban in Connecticut, *National Association for Gun Rights v. Lamont*, Case No. 23-1162 (2d Cir. 2023).  *See Lane*, Case No. 7:22-cv-

10989, DE [101] (S.D.N.Y. April 9, 2025).  Thus, the Second Circuit may have a future opportunity to consider New York's assault weapons regulations in light of *Bruen*, but because *Bruen* was decided after the events relevant to this action, it does not impact whether Plaintiffs' right to manufacture assault weapons was "clearly established" when the Moving Defendants took their challenged actions.  *See Neary*, 753 F. App'x at 84.

Here, the Moving Defendants relied on their interpretation of N.Y. Penal Law §§ 265.00(22) and 265.10 in the Campaign and reasonably believed that Defendants' manufacture of the CT4-2A violated those provisions.  *See* Compl., ¶¶ 119-20; Prosecution Memorandum at 3-8.  In their analysis, they reasoned that a pistol is not defined in the statute, and that the statute envisions a semiautomatic "pistol" designed to be held with both hands.  *See* Compl., ¶ 73 ("New York State does not have a definition for the term 'pistol.'"); Prosecution Memorandum at 4-5; N.Y. Penal Law § 265.00(22)(c)(iii), as effective Aug. 24, 2020; *id.*, § 265.10, as effective Nov. 1, 2019.  The Complaint alleges that the Moving Defendants then determined that the CT4-2A is an "assault pistol" under the N.Y. Penal Law based on the analysis within the Prosecution Memorandum.  *See* Compl., ¶ 119.

The Court concludes that, based on the allegations on the face of the Complaint and the Prosecution Memorandum incorporated therein, it was objectively reasonable for the Moving Defendants to conclude that Plaintiffs did not have a right to manufacture or sell the CT4-2A, because it was a prohibited assault weapon.  In *Sanseviro v. New York*, the Second Circuit held that defendants there, members of

23

the New York State Police Department and the Nassau County District Attorney's Office, were entitled to qualified immunity after they determined that a semiautomatic rifle that was missing one qualifying characteristic to be classified as an "assault weapon," but which could be modified using "hand tools" into a weapon with such a characteristic, was an assault weapon. *Sanseviro*, 685 Fed.Appx. 75, 75-77 (2d Cir. 2017). The Court concluded that "[a]t the time of Sanseviro's arrest, it was not clearly established that [N.Y. Penal Law] § 265.00(22)(a) (defining 'assault weapon') excluded rifles whose banned features were obscured or disguised." *Id.*, at 78. Accordingly, "an officer of reasonable competence could have concluded that" the rifle in question was prohibited for sale by the plaintiff, and the defendants were entitled to qualified immunity for arresting and prosecuting him. *Id.* at 79.

Here, the relevant statute did not define the term "pistol" at the relevant time, nor does it now. While Plaintiffs argue that "pistol" is synonymous with "handgun," and so the CT4-2A cannot be a pistol because it was not manufactured to be held in one hand, *see* Pls. Opp. to Creighton Mot. at 7-11, the Court is not persuaded. The N.Y. Penal Law envisions a semiautomatic pistol held with two hands and categorizes such a pistol as an "assault weapon." *See* N.Y. Penal Law § 265.00(22)(c)(iii), as effective Apr. 3, 2021 (a semiautomatic pistol with the ability to accept a detachable magazine and "a second handgrip or a protruding grip that can be held by the non-trigger hand" is a type of assault weapon). Thus, it was objectively reasonable for the Moving Defendants to conclude that the CT4-2A was a pistol. According to the statute, if the CT4-2A is a pistol, it is also an assault weapon, because it has the

ability to accept a detachable magazine, *see* Sineo Report at 1, and multiple other qualifying characteristics, including a second handgrip. *See* Compl., ¶ 43; N.Y. Penal Law § 265.00(22)(c), as effective Apr. 3, 2021. It was therefore also objectively reasonable for the Moving Defendants to conclude that the CT4-2A was illegal to purchase pursuant to N.Y. Penal Law § 265.02(7), as effective Mar. 16, 2013, and to manufacture pursuant to N.Y. Penal Law § 265.10, as effective Nov. 1, 2019, and to send the Letter and make the phone calls to purchasers that form the basis of this action. Accordingly, the Court concludes that even at this early stage of the pleadings, the Moving Defendants are entitled to qualified immunity on this claim, and the Court recommends dismissal with prejudice. *See Johnson v. City of New York, No.* 1:15-CV-8195-GHW, 2017 WL 2312924, at *12 (S.D.N.Y. May 26, 2017) (where a claim "is barred by qualified immunity, it is dismissed with prejudice.") (citing *Barton v. Fischer*, No. 14-cv-4733 (SJF), 2015 WL 4751683, at *6 (E.D.N.Y. Aug. 11, 2015)). And because the Court concludes that dismissal with prejudice is appropriate under the qualified immunity doctrine, it does not address the underlying merits of the claim.

### E. Plaintiffs' Claim Under the Takings Clause of the Fifth Amendment

Finally, the Moving Defendants argue that Plaintiffs' Fifth Amendment takings clause cause of action should be dismissed on qualified immunity grounds, *see* Sini Mem. at 4-10, Creighton Mem. at 11-13, Mauro Mem. at 8-14, and on the merits. *See* Sini Mem. at 14-15, Creighton Mem. at 22-23, Mauro Mem. at 20-21. The

Court concludes that Plaintiffs have failed to plausibly allege that a taking occurred, and so Defendants are entitled to dismissal for failure to state a claim.

"The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 550 (2d Cir. 2023), *cert. denied sub nom. Cmty. Hous. Improvement Program v. City of New York, New York*, 144 S. Ct. 264, 217 L. Ed. 2d 113 (2023) (quoting U.S. Const. amends. V, XIV, § 1). Relevant here, a regulatory taking "occurs 'when the government acts in a regulatory capacity' to infringe on an individual's property rights.'" *S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 271 (E.D.N.Y. 2022) (quoting *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006)).  The Complaint alleges that a taking occurred because the Moving Defendants' actions impacted Plaintiffs' ability to sell the CT4-2A and deprived Plaintiffs of their assets, including their "good will" and the "value of their business." Compl., ¶¶ 161, 164.  Because Plaintiffs allege that they lost only customers in New York, 40% of sales, and some out-of-state commercial accounts, *see* Compl., ¶¶ 138, 157, 164, the type of taking Plaintiffs allege is a non-categorical regulatory taking.  *Everest Foods Inc. v. Cuomo*, 585 F. Supp. 3d 425, 443 (S.D.N.Y. 2022) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 330, 122 S. Ct. 1465, 1483 (2002)) ("A categorial taking occurs when a regulation denies all economically beneficial or productive use of land[, while a] non-categorical taking may result from anything less than a complete elimination of value, or a total loss.") (internal quotations omitted).

26

Courts apply the analysis set forth in *Penn Central Transp. Co. v. City of New York* in this context. *Penn Central Transp. Co.,* 438 U.S. 104, 124-28, 98 S. Ct. 2646, 2659-61 (1978); *see Everest Foods Inc.,* 585 F. Supp. 3d at 443.

> To determine whether a non-categorical regulatory taking has occurred, requiring compensation, courts assess: (i) the economic impact of the regulation on the owner; (ii) the extent to which the regulation interferes with distinct investment-backed expectations; and (iii) the character of the governmental action, including whether the action promoted "the health, safety, morals, or general welfare of the public" or amounted to a "physical invasion" of property.

*Everest Foods Inc.,* 585 F. Supp. 3d at 443 (quoting *Penn Central Transp. Co.,* 438 U.S. at 124-28, 98 S. Ct. at 2659-61).

As to the first factor, Plaintiffs have alleged that their business generally suffered as a result of the Moving Defendants' actions. *See* Compl., ¶¶ 138, 157, 164. As to the property subject to a taking, however—Plaintiffs' good will, the value of their business, and their ability to sell the CT4-2A, *see id.,* ¶¶ 161, 164; Pls. Opp. to Mauro Mot. at 21— they are unsuccessful under this factor. While Plaintiffs claim that their sales decreased, *see* Compl., ¶ 157, they do not allege the relative economic impact of those sales on the overall value of their business or on their good will, which term Plaintiffs do not define. Moreover, to the extent Plaintiffs base their takings clause claim on their inability to sell the CT4-2A, only one firearm, in the New York market, "'it is well settled that a "taking" does not occur merely because a property owner is prevented from making the most financially beneficial use of a property.'" *Remauro v. Adams,* No. 21-CV-4553 (ARR) (TAM), 2022 WL 1525482, at *7 (E.D.N.Y. May 13, 2022) (citing *Kabrovski v. City of Rochester,* 149 F. Supp. 3d 413, 425

(W.D.N.Y. 2015)).  Indeed, Plaintiffs allege that "at all times relevant to this action," the CT4-2A was sold in "49 of the 50 United States," and so they may make beneficial use of their property interest in that firearm by selling it in many other markets. Compl., ¶ 26.  Accordingly, this factor weighs against finding a taking.

As to the second factor, Plaintiffs do not allege with what "distinct investment-backed expectations" the Moving Defendants' actions interfered.  *Everest Foods Inc.*, 585 F. Supp. 3d at 443.  "'By omitting discussion of investment-backed expectations, the pleading fails to allege plausibly a taking under this factor.'"  *Ruradan Corp. v. City of New York*, No. 22-CV-03074 (LJL), 2023 WL 2632185, at *12 (S.D.N.Y. Mar. 24, 2023) (citing *Greenport Gardens, LLC v. Vill. of Greenport*, 2021 WL 4480551, at *12 (E.D.N.Y. Sept. 30, 2021)).

With regard to the third factor, "a taking 'may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 402 (N.D.N.Y. 2020) (quoting *Penn Cent. Transp. Co.*, 438 U.S. at 124, 98 S. Ct. at 2659)).  Further, "government actions possess the character of regulatory takings when they visit 'affirmative exploitation' on affected parties, as opposed to 'negative restrictions.'" *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 168 (S.D.N.Y. 2020) (quoting *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006)).  Here, Plaintiffs do not allege that the Moving Defendants effected a "physical invasion," *Lebanon Valley Auto Racing Corp.*,

28

478 F. Supp. 3d at 402, and their conduct formed a negative restriction on Plaintiffs' ability to sell the CT4-2A, rather than an affirmative exploitation. *Elmsford Apartment Assocs., LLC*, 469 F. Supp. 3d at 168. Moreover, Plaintiffs acknowledge that the Moving Defendants' efforts were ostensibly undertaken in the public interest. Pls. Opp. to Sini Mot. at 20-21. Accordingly this factor weighs against a taking, as well.

Because all three *Penn Central* factors weigh against concluding that the Plaintiffs have sufficiently alleged a taking in violation of the Fifth Amendment, the Court recommends dismissing this claim without prejudice and with leave to amend. *See Parot,* 2023 WL 4163528, at *1. As explained above, because this cause of action fails on the merits, and because the Court recommends leave to replead, it is premature to consider whether qualified immunity bars this cause of action.

## IV.    CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that the Moving Defendants' Motions be granted without prejudice as to Plaintiffs' claims under the Fifth and Fourteenth Amendment, and with prejudice as to their Second Amendment cause of action, and the Complaint dismissed as to the Moving Defendants.[2] Because Defendants the County, LoRusso and Skiber answered rather than moving to dismiss, the claims against them remain.

---

[2] Creighton alone moves for dismissal on absolute immunity grounds. *See* Creighton Mem. at 8-11. "[W]hen it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York*, 45 F.3d 653, 663 (2d. Cir. 1995) (citation omitted). Here, the Court concludes that the allegations of the Complaint do not make it clear whether Creighton's involvement in the

## V.    OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:         Central Islip, New York
               July 22, 2025

                                              s/ Steven I. Locke
                                              STEVEN I. LOCKE
                                              United States Magistrate Judge

---

Campaign was performed "in an advocacy or an investigatory role," and so dismissal on absolute immunity grounds is inappropriate at this stage.